328 So.2d 271 (1976)
FRANK COULSON, INC.  BUICK, Appellant,
v.
Florine E. TRUMBULL, As Executrix of the Estate of George T. Trumbull, Deceased, Appellee.
No. 74-1342.
District Court of Appeal of Florida, Fourth District.
February 27, 1976.
Rehearing Denied March 30, 1976.
*272 F. Kendall Slinkman of Farish & Farish, West Palm Beach, for appellant.
Marjorie D. Gadarian of Jones, Paine & Foster, West Palm Beach, for appellee.
DOWNEY, Judge.
Appellant, Frank Coulson, Inc.  Buick, sued appellee, George T. Trumbull, in two counts, one for libel and the other for intentional interference with an advantageous business relationship. At the end of the plaintiff's case the trial court directed a defense verdict on the libel count. The interference count suffered the same fate at the close of all of the evidence in the case. Coulson appeals from a final judgment based upon the directed verdicts.
Appellant's claims arose out of several letters written by appellee to executives of General Motors Corporation in which appellee passed on to General Motors allegedly false information about appellant, a Buick automobile dealership. One of the letters addressed to an executive of the Buick division stated in material part:
"Mr. Franklin Clements has informed me of the deplorable conditions existing at the Coulson Buick Agency, Delray Beach, Florida. The physical condition is not properly maintained. The service is very bad and in some instances it has taken six weeks to get parts. The attitude of the personnel is negative. The owner is seldom on the job. In other words, the agency is in a mess.
"Mr. Clements, a close friend is a man of high integrity, not one to find cause of complaint unless justified. He is a person of affluence, being President of one of Delray Beach's best clubs and a member of many others. He personally informed me that he is the owner of many General Motors products over the years and he is alarmed at such a situation existing in this community of many responsible people. Some friends because of this bad condition have purchased competitive products."
Appellant alleged that as a result of these communications from appellee (which appellee knew or should have known were false), General Motors became highly critical of appellant's agency and eventually forced appellant to sell the agency at a price far below its true value.
Our review of the record discloses evidence which, viewed in the light most favorable to appellant, would support findings that: (a) appellee's informant did not tell him that competitive products were being purchased because of the bad condition of the agency or that the agency was in "deplorable condition" or that it was "in a mess"; (b) appellee had no personal knowledge of the dealership, the attitude of its personnel, its modus operandi, or any of its other features; (c) as a result of the *273 communications in question appellant was virtually drummed out of the corps by General Motors; (d) appellant was forced to sell its Buick agency at a price substantially below the true value of the agency;[1] (e) appellant had legal rights arising out of an existing business relationship and appellee was guilty of an intentional and unjustified interference with that relationship, as a result of which appellant suffered damage. Thus, we conclude that appellant made a prima facie case for intentional inference with an advantageous business relationship, thereby requiring presentation of that issue to the jury for resolution. John B. Reid & Associates, Inc. v. Jiminez, Fla.App. 1965, 181 So.2d 575.
In arguing for affirmance appellee contends that as the owner of 90,000 shares of stock in General Motors Corporation he was qualifiedly privileged to publish the communication in question. We think the trier of fact should have been permitted to determine whether appellee proved that his actions were privileged. See, e.g., Collins v. Vickter Manor, 47 Cal.2d 875, 306 P.2d 783 (1957).
Because the jury should have resolved the question whether appellee intentionally interfered with appellant's advantageous business relationship and the question whether appellee's actions were privileged, it was error for the trial court to direct a verdict for appellee on either count.[2]
Because the case must be tried again we deem it advisable to treat one additional point on appeal. Appellant contends the trial court erred in precluding it from showing on cross examination that two of appellee's witnesses harbored bias or prejudice against appellant because of other litigation involving those witnesses. As heretofore mentioned appellant sued General Motors Corporation in the federal court system for damages arising out of this same general factual situation. One of the primary witnesses for General Motors against appellant was a General Motors representative, James Dougherty. Appellant sued Mr. Franklin G. Clement in the Fifteenth Judicial Circuit of Florida for his part in this whole picture. At the trial of the present case the court would not allow appellant to cross examine Dougherty or Clement, in an effort to demonstrate their possible bias against appellant as a result of those other suits. While no great incursion into the detail of those other suits or their result would be appropriate, we feel it was certainly relevant for the jury to consider the witnesses' involvement in litigation with the appellant in determining the credibility of those witnesses. Thus, on retrial we believe a showing of such involvement would be appropriate.
Reversed and remanded for a new trial.
CROSS, J., concurs.
WALDEN, C.J., dissents without opinion.
NOTES
[1] Such a finding was made on this facet of the case in a similar action by Coulson against General Motors Corporation reported at 488 F.2d 202 (5th Cir.1974).
[2] Since the count of the complaint for libel and the count for interference are based upon the identical publications, those counts would appear to give rise to the same possible damages; and if appellant upon retrial is able to prove its cause of action and damages for interference such proof would cover any claim inherent in the count for libel. Cf. Orlando Sports Stadium, Inc. v. Sentinel Star Co., Fla.App. 1975, 316 So.2d 607; Prosser, Law of Torts, § 128 (4th Ed. 1971).