404 So.2d 354 (1981)
Dennis P. DILLON, Jr., a Minor, by and through Dennis P. Dillon and Aurelia M. Dillon, His Parents, Etc., Appellants,
v.
Frederick W. CHAPMAN and Liberty Mutual Insurance Company, Etc., Appellees.
No. 80-853.
District Court of Appeal of Florida, Fifth District.
May 13, 1981.
Rehearing Denied July 7, 1981.
Motion to Stay Denied August 19, 1981.
*355 Sammy Cacciatore and James A. Sisserson of Nance, Cacciatore & Sisserson, Melbourne, for appellants.
Janet R. DeLaura of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Rockledge, for appellees.
Larry Klein, West Palm Beach, for amicus curiae The Academy of Florida Trial Lawyers.
DAUKSCH, Chief Judge.
This is an appeal from an order which found sections 627.737 et seq., Florida Statutes (1979), (the 1979 no-fault act) to be constitutional, granted defendants' Motion for Judgment on the Pleadings and, in the alternative, granted defendants' Motion to Dismiss with Prejudice. Defendants' motions were granted because plaintiffs' pleadings did not meet the tort threshold required by section 627.737, Florida Statutes (1979), in order to sue for plaintiffs' damages.
Plaintiffs sued for damages arising from severe and significant injuries sustained by Dennis P. Dillon, Jr., a minor, in an automobile accident. Plaintiffs' pleadings stated that Dillon was not permanently injured, did not sustain permanent and significant scarring and/or disfigurement, had not incurred a significant and permanent loss of a bodily function, and had not suffered an aggravation of a pre-existing condition. The pleadings also stated that Dillon sustained a loss of earning capacity while recovering from the accident and had incurred medical expenses in excess of $1,000.00.
Plaintiffs advance three arguments in support of their contention that the trial court erred in finding various provisions of the no-fault act to be constitutional: (1) the provisions deny their constitutional right of access to the courts; (2) the provisions violate their due process rights as guaranteed by the Florida Constitution and the Fourteenth Amendment to the United States Constitution, and (3) the provisions violate *356 their rights to equal protection under the laws. Although we are well aware of our supreme court's opinions concerning our no-fault act in Lasky v. State Farm Insurance Company, 296 So.2d 9 (Fla. 1974), and Kluger v. White, 281 So.2d 1 (Fla. 1973), we find that various legislative changes have substantially altered this law so as to cause it to be violative of plaintiffs' due process rights and their right of access to Florida courts for redress of injuries.

DENIAL OF RIGHT OF ACCESS TO THE COURTS
The complaint in the instant case alleged Dillon had experienced extreme mental pain and physical suffering, intangible injuries for which damages have historically (before "no-fault") been recoverable through an action in tort. However, since this complaint clearly showed that the plaintiffs did not meet the threshold required by section 627.737(2), Florida Statutes (1979), the trial court found plaintiffs to be precluded from maintaining their action for redress of Dillon's injuries.
Florida's Constitution contains a guarantee of "redress of any injury":
The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.
Art. I, sec. 21, Fla. Const. However, the guarantee contained within this provision is not absolute. Rather, this provision has been interpreted as meaning that the Legislature may only abolish the right of access to the courts for redress of a particular injury if it provides a reasonable alternative, unless it shows "an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown." Kluger v. White, 281 So.2d 1, 4 (Fla. 1973).
Since the Legislature has abolished plaintiffs' right for redress for Dillon's injuries of pain and suffering, this court must consider whether the 1979 no-fault act provides a reasonable alternative or whether the Legislature has shown an overpowering public necessity for the abolishment of this right with no alternate method being available to meet this necessity. See Lasky v. State Farm Insurance Company, 296 So.2d 9 (Fla. 1974).
In Lasky, our supreme court found that the denial of recovery to certain injured persons for pain and suffering under the 1972 no-fault act[1] did not deny them their right of access because the Legislature had established a reasonable alternative. The court first noted that the exemption for tort liability only applied to owners of motor vehicles who maintained security as required by the no-fault act. Sec. 627.737, Fla. Stat. (1971). The court then found that the security maintained by these owners, together with the provisions of the 1972 no-fault act, provided a reasonable alternative to traditional actions for pain and suffering because there was only a limited class of cases barred from recovery,[2] the injured party was assured of recovery of all his major and salient economic losses even when he was at fault, there would be a speedy payment by the insured's own insurer of medical costs and lost wages, and the injured party himself was immune from suits for pain and suffering of the other parties to an accident to the limited extent provided by the no-fault act.[3]
Amendments to the 1972 act have removed some of the very provisions which the Lasky court relied upon in finding a reasonable alternative. The change most inimical to any finding that the 1979 act constitutes a reasonable alternative is the provision which only allows an injured party to collect part of his medical expenses and lost income. Sec. 627.736(1), Fla. Stat. (1979). When the Lasky court considered the 1972 no-fault act, it provided 100% recovery *357 for medical expenses and 85% or 100% recovery for lost income, less deductibles. Chapter 77-468, Laws of Florida, amended these recovery provisions and the present no-fault act allows an injured party to only recover 80% of his medical expenses and either 60% or 80% of his lost income. However, the injured party may recover the remaining percentage of his expenses through litigation because section 627.737(1), Florida Statutes (1979), only grants an exemption from tort liability for damages "to the extent that the benefits described in s. 627.736(1) are payable for such injury, or would be payable but for any exclusion or deductible authorized by ss. 627.730-627.741... ."
Another change which diminishes from the adequacy of the 1979 no-fault act is the increase of the allowable deductibles. Under the 1972 act, the required personal injury protection (PIP) coverage was $5,000.00 with a maximum deductible of $1,000.00. Sec. 627.739(1), Fla. Stat. (1971). The 1979 no-fault act requires PIP coverage of $10,000.00 but the maximum allowable deductible is $8,000.00. Sec. 627.739(1), Fla. Stat. (1979). This change means that the 1979 act allows for decreased PIP coverage.
These changes to sections 627.736, 627.737 and 627.739 mean that these provisions no longer provide a reasonable alternative for redress of injuries suffered in automobile accidents. Injured parties no longer receive full compensation for their expenses or lost income. Increased deductibles result in decreased PIP coverage and diminish the likelihood that an injured party will promptly recover his major out-of-pocket expenses arising from the accident. Injured parties are now able and are being forced to resort to the courts to recover that portion of their damages not payable by insurance carriers by reason of the no-fault act  remaining uncovered expenses, lost income and deductibles. One of the most strident arguments in favor of no-fault type insurance legislation has been that the multitude of suits unnecessarily crowds the courts with injured persons' lawsuits. This legislation does not reduce the number of lawsuits, then, but merely reduces the amount to be sued for. Of course, we cannot ignore the very practical consideration that some lawsuits will not be filed because they are not "worth it" but that is certainly not the way our society views redress for injured persons; the constitution and our very makeup requires every person to be redressed for wrongs against him. We find that these sections thereby violate plaintiffs' constitutional right of access to Florida courts for redress of their injuries.
There remains the question of whether the Legislature has shown an overpowering public necessity and no alternative method of meeting this necessity which requires the abolishment of plaintiffs' right of access to the courts for redress of injuries. See Kluger, 281 So.2d at 4. We find that the Legislature has not shown any public necessity different from that which was present when the Lasky court considered the 1972 no-fault act. The provisions upheld in Lasky thereby constitute an alternative method for meeting such necessity.

DUE PROCESS
We also find that sections 627.736(1), 627.737(1), and 627.739(1), Florida Statutes (1979), cause plaintiffs' due process rights to be violated and are thus unconstitutional. The provisions of these sections do not bear a reasonable relationship to permissible legislative objectives and are discriminatory and oppressive.
The Lasky court found the 1972 no-fault act to be reasonably related to a number of permissible legislative objectives: (1) a lessening of the congestion of the court system with a reduction in concomitant delays in the court calendars; (2) assurance that persons injured in vehicular accidents would receive some economic aid in meeting medical expenses and the like, in order not to drive injured persons into dire financial circumstances with the possibility of swelling the public relief rolls; (3) correcting the traditional tort system of reparations which supposedly led to inequalities of recovery; (4) modifying the tort system of reparations which was unduly slow and inefficient; (5) correcting the pre-existing automobile insurance *358 system which was supposedly unduly costly; and (6) correcting the situation in which the pressing necessity of paying medical bills often forced an injured party to accept an unduly small settlement for his claim.
The changes to sections 627.736, 627.737 and 627.739 noted above cause the 1979 no-fault act to no longer be reasonably related to several of the permissible legislative objectives noted in Lasky: (1) injured parties are able to initiate suits for expenses not payable by an insurer thereby obviating the objective of lessening court congestion; (2) the inability of injured parties to receive full compensation and the larger amounts of the deductibles increase the likelihood that injured parties will be forced into dire financial circumstances; (3) the provisions enabling injured parties to sue for that portion of their medical expenses and lost income not payable by an insurer causes it to be inordinately expensive to recover damages for these injuries; and (4) the provisions precluding full compensation for medical expenses and lost income but enabling suit for part of these damages establishes a slow and inefficient tort system for reparations.
The increase of the permissible amount deductible as provided by section 627.739(1), Florida Statutes (1979), is also discriminatory and oppressive. Poor persons are now able to obtain less costly insurance coverage by opting for the maximum deductible of $8,000.00. If these persons are in an accident, they would be least likely to be able to afford to pay their medical expenses and at the same time would be the most affected by their loss of income. Yet, if they have the maximum deductible, their recovery under the 1979 no-fault act could be negligible. This situation would drive these poor persons into dire financial circumstances with the possibility of swelling the public relief rolls.

EQUAL PROTECTION
The plaintiffs also contend that the threshold provisions of the 1979 no-fault act requiring a permanent injury violate their constitutional right to equal protection. Under the 1972 no-fault act an injured party was able to bring suit in tort for pain and suffering in instances where the benefits for medical expenses were greater than $1,000.00. In order to recover for pain and suffering under the 1979 no-fault act an injured party must show one of the following:
(a) Significant and permanent loss of an important bodily function.
(b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
(c) Significant and permanent scarring or disfigurement.
(d) Death.
Sec. 627.737(2), Fla. Stat. (1979).
It is argued that this threshold classification bears a reasonable relationship to a permissible legislative purpose; that the legislative purpose is to decrease court congestion and reduce the concomitant delays in court calendars. A reasonable relationship does not require perfection, it only requires a set of facts which reasonably may be conceived to justify it. In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980). The supreme court in Lasky found:
It is not arbitrary to differentiate between persons permanently injured and those who will recover from their injuries insofar as allowing only the former group to recover ... for pain and suffering. Rather, this is a reasonable classification allowing those most likely to incur substantial and prolonged pain to recover damages to recompense them, while not granting such right of recovery to those substantially less likely to incur any prolonged pain.
296 So.2d at 19. We must follow this declaration of our supreme court in Lasky supporting the conclusion that the threshold provisions of the 1979 no-fault act do not deny plaintiffs their right to equal protection.
Accordingly, the order of the trial court which found sections 627.737 and 627.739, Florida Statutes (1979), constitutional, granting defendants' summary judgment *359 and in the alternative granting defendants' motion to dismiss is reversed and the cause remanded for further proceedings.
REVERSED AND REMANDED.
FRANK D. UPCHURCH, Jr., and COWART, JJ., concur.

ON MOTION FOR STAY
PER CURIAM.
Appellees have filed a Motion to Stay the issuance of the mandate in this case alleging that "much judicial confusion and waste of money and legal efforts will occur" if we do not issue a stay order and the opinion in this case is later reversed. The motion alleges "Stay is warranted here to avoid conflict between and chaos among the trial courts of the Fifth District and the trial courts of sister districts within which this court's judgment is persuasive only."
This latter allegation is not true.
A trial court not in this district is obliged to follow the dictates of our decision until told otherwise by its own district court or the supreme court. Holmes v. Blazer Financial Services, Inc., 369 So.2d 987 (Fla. 4th DCA 1979); State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1979). See also Stanfill v. State, 384 So.2d 141 (Fla. 1980).
The Motion for Stay is denied.
DAUKSCH, C.J., FRANK D. UPCHURCH, Jr., and COWART, JJ., concur.
NOTES
[1] §§ 627.730 et seq., Fla. Stat. (1971), effective January 1, 1972.
[2] Injured parties who do not meet the threshold requirement of section 627.737(2), Florida Statutes (1977).
[3] See sec. 627.737(1), Fla. Stat. (1977).